# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AIR LINE PILOTS ASSOCIATION,
        *Petitioner-Cross-Respondent,*

v.

NATIONAL LABOR RELATIONS
BOARD,
        *Respondent-Cross-Petitioner,*

ABX AIR, INC.,
                    *Intervenor.*

Nos. 05-75333
    05-76566

N.L.R.B.
No. 9-CC-1660

OPINION

On Petition for Review and Cross-Petition for Enforcement
of an Order of the National Labor Relations Board

Argued and Submitted
October 17, 2007—San Francisco, California

Filed May 8, 2008

Before: Jane R. Roth,* Sidney R. Thomas and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Roth

---

*The Honorable Jane R. Roth, Senior United States Circuit Judge for
the Third Circuit, sitting by designation.

## COUNSEL

Dmitri Iglitzin, Schwerin Campbell Barnard LLP, Seattle, Washington, and Jerry D. Anker and R. Russell Bailey, Air Line Pilots Association, International, Washington, D.C., for the petitioner-cross-respondent.

David Habenstreit and Jason Walta, National Labor Relations Board, Washington, D.C., for the respondent-cross-petitioner.

Norman A. Quandt, Ford & Harrison LLP, Atlanta, Georgia, and Charles I. Cohen and Jonathan C. Fritts, Morgan, Lewis & Bockius LLP, Washington, D.C., for the intervenor.

---

## OPINION

ROTH, Circuit Judge:

The Air Line Pilots Association (ALPA) petitions this Court to review a final Decision and Order of the National Labor Relations Board (the Board or NLRB). The NLRB petitions for enforcement of its Order. ABX Air, Inc., the charging party before the NLRB, intervenes in this appeal as a matter of right.

The NLRB Complaint against ALPA alleged that, by attempting to enforce certain provisions of a collective bargaining agreement with DHL Airways, ALPA had committed unfair labor practices. After a hearing, an Administrative Law Judge (ALJ) ruled that ALPA had violated the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151 *et seq*., and ordered ALPA to take remedial action. ALPA filed exceptions to the ALJ's decision. The NLRB issued a Decision and Order, likewise finding that ALPA's conduct violated the National Labor Relations Act and adopting the ALJ's order.

We have jurisdiction pursuant to 29 U.S.C. §§ 160(e) and 160(f). For the reasons stated below, we will grant ALPA's petition for review and deny the Board's cross-petition for enforcement.

## FACTUAL AND PROCEDURAL BACKGROUND

ALPA was certified by the National Mediation Board as the representative of the DHL Airways pilots in 1990, pursuant to the Railway Labor Act (RLA), 45 U.S.C. §§ 151 *et seq*. At that time, DHL Airways was a wholly-owned subsidiary of a holding company that we will refer to as DHL Holdings. The principal business of the DHL Holdings network is the rapid pickup, sorting, and carriage on a time-sensitive basis of documents, small parcels, and other freight.

ALPA is the oldest and largest labor organization in the United States, representing airline pilots covered by the Railway Labor Act. ALPA's national membership includes over 62,000 pilots. At the time of the present dispute, ALPA represented approximately seventeen pilots of Ross Aviation, Inc. It is undisputed that because the Ross Aviation pilots are covered by the National Labor Relations Act, ALPA is considered a "labor organization" within the meaning of the Act.

ALPA and DHL Airways entered into a collective bargaining agreement in 1998. The Scope Clause of that agreement provides, in part, that "all present and future flying performed on [DHL Airways'] behalf . . . shall be performed by [DHL Airways'] pilots" and that "it is [DHL Airways'] intent to handle permanent increases in volume through the acquisition of additional airlift capacity rather than subcontracting, and to use [DHL Airways pilots] to the maximum extent possible." DHL Holdings subsequently agreed in a Side Letter Agreement that it and any of its successors would be bound by the Scope Clause.

### A.   Restructuring of the DHL Entities

The DHL network restructured its U.S. operations in both March 2001 and July 2003. The March 2001 restructuring was necessary because a foreign entity (DHL International, Ltd.) wanted to acquire majority ownership of the DHL Holdings network. U.S. law requires that a minimum of seventy-five percent of the voting power of a U.S. airline be held by U.S. citizens, that the president and at least two-thirds of the board of directors and other managing officers be U.S. citizens, and that the airline be under the "actual control" of U.S. citizens. 49 U.S.C. §§ 40102(a)(15), 41102. Thus, in March 2001, DHL Holdings transferred the ground operations of DHL Airways to a new, wholly-owned DHL Holdings subsidiary called DHL Worldwide Express, Inc. (DHL Worldwide). DHL Airways was left with only the assets related to the air operations. In light of the U.S. ownership restrictions, a majority of the voting and equity interest in DHL Airways was sold to a U.S. citizen.

DHL Holdings, DHL Worldwide, and DHL Airways entered into contractual arrangements with each other that enabled the air and ground network to be operated just as it had prior to the restructuring. The DHL Airways air operations personnel remained employees of DHL Airways and continued to perform roughly the same work that they had previously performed.

DHL Holdings sold its remaining shares of DHL Airways on July 14, 2003. Following the sale, DHL Airways was wholly-owned by a group of independent investors, one of whom was its chief executive. The new owners changed DHL Airways' name to ASTAR Air Cargo, Inc. On July 14, 2003, ASTAR and DHL Worldwide entered into a new Aircraft, Maintenance and Insurance Agreement with respect to the provision of freight services.

Meanwhile, in March 2003, the parent company of DHL Holdings announced an agreement to merge with Airborne, Inc. Airborne was similarly engaged in the business of time-sensitive delivery of documents, small packages, and other freight. Airborne had its own flying subsidiary, ABX. ABX pilots are represented by the Teamsters and governed by the Railway Labor Act. When the merger was completed on August 15, 2003, ABX became an independent company[1] and Airborne, consisting only of ground operations, became a wholly-owned subsidiary of DHL Holdings. ABX entered into its own Aircraft, Maintenance and Insurance Agreement with Airborne.

The ABX pilots serve more cities, serve different cities, fly different machinery, and handle considerably more volume than ASTAR pilots. ABX pilots use a hub system, with Wilmington, Ohio, as the primary hub. ASTAR pilots do not have a regional hub system. The ABX pilots serve over 100 different markets, while the ASTAR pilots serve only about thirty-three. The ABX pilots fly different airplanes than the ASTAR pilots because the ABX airplanes are specifically configured for a different type of container (on which ABX holds a patent) than that used by ASTAR and others in the freight transportation industry. The loading of the ABX containers requires a unique conveyer belt system (also covered by an ABX patent). The ABX pilots typically fly two-man crews, whereas the ASTAR aircraft require three-man crews. ABX pilots transport about 8.5 million pounds of cargo a day, while ASTAR handles only about 900,000 pounds. Finally, ASTAR pilots have category I certifications, whereas ABX pilots have category II and III certifications, which enable them to land under weather conditions with more limited visibility.

---

[1]ABX was separated from Airborne to comply with the U.S. ownership limitations discussed above.

B.  *ALPA's Efforts To Enforce the Collective Bargaining Agreement*

On June 16, 2003, prior to completion of the Airborne merger, ALPA sent DHL Holdings a letter asserting that the flying generated by the former Airborne operations would be subject to the scope provisions of the DHL Airways (now ASTAR) collective bargaining agreement. Representatives from ALPA and the DHL Holdings network met to discuss the matter on August 7, 2003. At the conclusion of the meeting, ALPA submitted a grievance against DHL Holdings and DHL Worldwide, alleging violations of the collective bargaining agreement and requesting expedited arbitration as required by the agreement.

DHL Holdings then filed an action against ALPA in the District Court for the Southern District of New York. DHL Holdings sought a declaratory judgment that the collective bargaining agreement did not require that ASTAR perform future flying on behalf of Airborne. In the alternative, DHL Holdings sought an order that ALPA's claim over the Airborne work was a representation dispute within the exclusive jurisdiction of the National Mediation Board under the Railway Labor Act. ALPA filed an answer and counterclaim, contesting the allegations and requesting that the District Court compel DHL Holdings to submit the underlying dispute to arbitration, declare that the collective bargaining agreement was in full force and effect, and restrain DHL Holdings from implementing any agreement with ABX pursuant to which any flying on behalf of DHL Airways or its subsidiaries would be performed by non-ASTAR pilots.

On September 10, 2003, ABX filed a Charge with the NLRB against ALPA alleging that, by filing the grievance and attempting to force DHL Holdings not to do business with ABX, ALPA had violated the National Labor Relations Act. The District Court action was stayed pending resolution of ABX's Charge.

The NLRB issued a formal Complaint against ALPA on December 10, 2003. The Complaint alleged that ALPA's filing of the counterclaim as well as the grievance violated the secondary boycott provisions of the National Labor Relations Act. ALPA countered that the NLRB did not have jurisdiction over the dispute, arguing in part that the present dispute was a Railway Labor Act dispute and that, under the Supreme Court's holding in *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369 (1969), the National Labor Relations Act did not apply; the Railway Labor act did.[2] ALPA also argued that it had not violated the secondary boycott provisions of the National Labor Relations Act.

An Administrative Law Judge (ALJ) held a hearing on the NLRB's Complaint against ALPA on March 10 and 11, 2004. In a July 2, 2004, decision, the ALJ found that ALPA had committed the violations alleged in the Complaint and recom-

---

[2]In *Jacksonville Terminal*, the Supreme Court considered whether a state court could enjoin the picketing of a rail terminal facility by railroad employees. The operator of the terminal, which sought the injunction in state court, was a corporation jointly owned and controlled by four railroad companies. The picketers were employees of one of the railroads. *Jacksonville Terminal*, 394 U.S. at 372-75. The unions representing the employees argued that the state court's jurisdiction was displaced by the exclusive jurisdiction of the National Labor Relations Act. *Id.* at 375. The Supreme Court disagreed on the ground that the National Labor Relations Act exempts employees and employers subject to the Railway Labor Act. *Id.* at 376. The unions contended that the dispute was covered by the National Labor Relations Act by virtue of the fact that the unions' national membership included a small number of employees who were not subject to the Railway Labor Act but might be subject to the National Labor Relations Act. The Court rejected this argument. *Id.* at 375. Instead, the Court held, "when the traditional railway labor organizations act on behalf of employees subject to the Railway Labor Act in a dispute with carriers subject to the Railway Labor Act, the organizations must be deemed, *pro tanto*, exempt from the National Labor Relations Act." *Id.* at 376-77. The Supreme Court concluded that the dispute between the unions and the terminal operator was "a railway labor dispute, pure and simple," notwithstanding the fact that the unions represented some non-Railway Labor Act employees. *Id.* at 378.

mended a remedial order. ALPA filed exceptions to this decision.

## C.   The NLRB's Decision and Order

On August 21, 2005, by a vote of two to one, the NLRB issued a Decision affirming the rulings, findings, and conclusions of the ALJ and adopting his recommended order. NLRB Member Liebman dissented.

On review, the NLRB concluded that the ALJ had properly found that the NLRB had jurisdiction over the dispute. The NLRB found that, as ALPA conceded, ALPA was a "labor organization" under the National Labor Relations Act and therefore subject to its prohibitions, including the secondary boycott provisions.[3] This finding was based on ALPA's representation of the seventeen employees of Ross Aviation, who were in no way involved in the present dispute but who were covered by the National Labor Relations Act.

The NLRB found further that DHL Holdings, the object of ALPA's alleged coercion, was subject to the National Labor

---

[3]The secondary boycott provisions of the National Labor Relations Act make it unlawful for a "labor organization":

"(ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is —

(A) forcing or requiring any employer . . . to enter into any agreement which is prohibited by section 8(e);

(B) forcing or requiring any person . . . to cease doing business with any other person."

29 U.S.C. § 158(b)(4)(ii). Section 8(e) of the National Labor Relations Act generally prohibits any agreement between an employer and a labor organization whereby the employer "ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person." 29 U.S.C. § 158(e).

Relations Act. The NLRB reasoned that "ALPA (an NLRA-covered labor organization) chose to enmesh DHL (an NLRA-covered employer) in its dispute with ABX (an RLA employer)." The NLRB concluded that ALPA's "extension of this dispute to an NLRA-covered employer distinguishes this case from *Jacksonville Terminal*." The NLRB found that, unlike *Jacksonville Terminal*, the present dispute was not a "pure" Railway Labor Act dispute.

Responding to dissenting NLRB Member Liebman's characterization of the case as requiring accommodation of two statutory regimes — the Railway Labor Act and the National Labor Relations Act — the NLRB determined that the plain language of the National Labor Relations Act, which permitted jurisdiction in this case, was the best means of determining whether the NLRB should exercise jurisdiction. The NLRB reiterated that ALPA subjected itself to NLRB jurisdiction by representing employees covered by the National Labor Relations Act. The NLRB found further that enforcing the National Labor Relations Act's secondary boycott provisions would not subvert the Railway Labor Act.

The NLRB also concluded that ALPA's pursuit of its grievance and counterclaim constituted unlawful secondary conduct. The NLRB found that the object of ALPA's conduct was to require DHL Holdings and its Airborne subsidiary to cease doing business with ABX. The NLRB considered whether ALPA's activity had a lawful work preservation object but determined that ALPA's conduct instead had an impermissible work acquisition object.

Having affirmed the Administrative Law Judge's holdings that the NLRB had jurisdiction over the dispute and that ALPA had violated the National Labor Relations Act, the Board adopted the ALJ's recommended remedy. In part, the Board's Order requires ALPA to cease and desist from violating the National Labor Relations Act, withdraw its grievance and counterclaim, reimburse DHL Holdings for reasonable

expenses and legal fees in defending against the grievance and counterclaim, and post a notice to its members regarding its remedial actions.

NLRB Member Liebman dissented from the Board's Decision and Order on the ground that the dispute should properly be adjudicated under the Railway Labor Act, not the National Labor Relations Act. The dissent concluded that the majority cited no persuasive reason or authority for asserting jurisdiction over the case and that, "at a minimum," *Jacksonville Terminal* "strongly counsel[ed] that the Board refrain from asserting jurisdiction." The dissent reasoned that the "essence" of the dispute was "between an RLA-covered employer [ABX] and an RLA-covered union [ALPA], representing RLA-covered, union-represented employees [the ASTAR pilots]."

## STANDARD OF REVIEW

We uphold an NLRB decision "when substantial evidence supports its findings of fact and when the agency applies the law correctly." *Sever v. NLRB*, 231 F.3d 1156, 1164 (9th Cir. 2000). Although the Board's construction of the National Labor Relations Act is subject to deference, we review its decision to determine whether the Board erred as a matter of law or proceeded from an erroneous premise. *NLRB v. Int'l Longshoremen's Ass'n*, 473 U.S. 61, 68, 78 (1985).[4]

---

[4]Normally, the "Board's construction of terms in the (the NLRA) that establish its statutory jurisdiction must be upheld if that construction is 'reasonably defensible.' " *Micronesian Telecomm. Corp. v. NLRB*, 820 F.2d 1097, 1099-1100 (9th Cir. 1987) (quoting *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 891 (1984)). However, such deference does not apply to the Board's interpretation of *Jacksonville Terminal*. *Jacksonville Terminal* accommodates two distinct statutory schemes of labor relations by creating an exemption from NLRB jurisdiction for primarily RLA disputes. The applicability of that exemption — unlike interpretations of the NLRA terms that establish the NLRB's jurisdiction — is not a subject that Congress has committed to the Board. *See Sure-Tan*, 467 U.S. at 891.

## ANALYSIS

**[1]** "There are two quite different bodies of federal labor law, the law of the Railway Labor Act for railroad and airline employees, and the law of the National Labor Relations Act and the Fair Labor Standards Act for most other employees." *Pan Am. World Airways, Inc. v. United Bhd. of Carpenters and Joiners of America*, 324 F.2d 217, 220 (9th Cir. 1963). The threshold issue in this appeal is whether the NLRB had jurisdiction to hear this dispute under the National Labor Relations Act.

**[2]** We conclude that, in determining that it had jurisdiction over this dispute, the Board misapplied the law of *Jacksonville Terminal Co.*, 394 U.S. 369. In *Jacksonville Terminal*, the Supreme Court rejected the argument that the National Labor Relations Board had exclusive jurisdiction over an action to enjoin a union of railroad employees from picketing a railway terminal, holding, "[W]hen the traditional railway labor organizations act on behalf of employees subject to the Railway Labor Act in a dispute with carriers subject to the Railway Labor Act, the organizations must be deemed, *pro tanto*, exempt from the National Labor Relations Act." *Id.* at 376-77. As this Court explained in *Pacific Maritime Association v. Local 63, International Longshoremen's and Warehousemen's Union*, 198 F.3d 1079, 1082 (9th Cir. 1999), the fact that the Railway Labor Act already existed when the National Labor Relations Act was enacted and the plain language of the National Labor Relations Act itself "led the [Supreme] Court to conclude that disputes covered by the Railway Labor Act remained exempt from the NLRA . . . ."

**[3]** *Jacksonville Terminal* therefore requires us to consider the substance of the dispute in determining whether the NLRB may exercise jurisdiction. *Bhd. of Teamsters and Auto Truck Drivers Local No. 70 v. Western Pac. R.R. Co.*, 809 F.2d 607, 610 (9th Cir. 1987). In the decision leading to this appeal, ABX brought a charge against ALPA, based on

ALPA's underlying dispute with DHL Holdings. ABX's charge challenged ALPA's efforts to promote the interests of its members, particularly to ensure that the ASTAR pilots would be able to transport the cargo currently flown by ABX, in keeping with ALPA's understanding of the collective bargaining agreement with DHL Airways and the Side Letter Agreement with DHL Holdings. In other words, the charge before the NLRB reflected a dispute between a traditional railway labor organization (ALPA), acting on behalf of employees subject to the Railway Labor Act (ASTAR pilots), and a carrier subject to the Railway Labor Act (ABX). *See NLRB v. Denver Bldg. Trades Council*, 341 U.S. 675, 688-89 (1951).

**[4]** The dispute between ABX and ALPA is the primary dispute in this case, the subject of both the NLRB's decision below and the present appeal. However, examining the underlying dispute between ALPA and DHL Holdings is instructive in considering the substance of the primary dispute. The underlying dispute that gave rise to ABX's charge reflected an effort by a traditional railway labor organization (ALPA), acting on behalf of employees subject to the Railway Labor Act (ASTAR pilots), to enforce a collective bargaining agreement entered into under the Railway Labor Act. The question of whether DHL Holdings was still bound by the collective bargaining agreement and the Side Letter Agreement was one that the litigation in federal district court was intended to resolve. DHL Holdings itself filed that lawsuit, invoking jurisdiction under the Railway Labor Act.

In its decision and on appeal, the NLRB has reasoned that the essence of this dispute is not between entities which are covered only by the Railway Labor Act and that therefore *Jacksonville Terminal* does not foreclose jurisdiction. The Board distinguished this case on the ground that, whereas *Jacksonville Terminal* involved entities that were all subject to the Railway Labor Act, ALPA chose to embroil DHL Holdings, a National Labor Relations Act employer, in this

case. As such, the Board concludes, this is not a "pure" Railway Labor Act dispute.

**[5]** Viewing the substance of this dispute, however, the involvement of DHL Holdings is not sufficient to distinguish *Jacksonville Terminal*. It is less the case that ALPA enmeshed DHL Holdings in this dispute than that ABX interfered in an existing dispute between ALPA and DHL Holdings — which ALPA and DHL Holdings were already working to resolve pursuant to the Railway Labor Act, and which involved Railway Labor Act employees.[5] Substantively, both the dispute between DHL Holdings and ALPA, and the present dispute between ABX and ALPA in which ALPA "enmeshed" DHL Holdings, are "pure" Railway Labor Act disputes.

The NLRB justified its exercise of jurisdiction on the ground that the secondary boycott provisions of the National Labor Relations Act plainly apply to ALPA. Those provisions apply to any "labor organization," defined to include "any organization of any kind . . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5).[6] ALPA stipulated that, at the time the case was heard, it represented seventeen employees of Ross Aviation, a National Labor Relations Act employer.

**[6]** Looking at the nature of this dispute, however, ALPA's representation of the Ross Aviation pilots should not prevent this case from being considered a Railway Labor Act case. In

---

[5]The Railway Labor Act provides its own system of dispute resolution. 45 U.S.C. §§ 151 *et seq.* The Supreme Court discussed the comprehensive nature of this system at length in *Jacksonville Terminal*. 394 U.S. at 377-78.

[6]The National Labor Relations Act exempts from its respective definitions of "employer" and "employee" employers who are subject to the Railway Labor Act and their employees. 29 U.S.C. §§ 152(2), (3).

*Jacksonville Terminal*, the unions' membership similarly included a "small percentage of employees who are not subject to the Railway Labor Act, and who may be subject to the National Labor Relations Act." 394 U.S. at 375.[7] None of ALPA's National Labor Relations Act employee members are in any way involved in the present case. This case concerns ALPA's efforts to enforce a scope clause regarding only air transportation work on behalf of Railway Labor Act pilots. As noted above, ALPA and DHL Holdings were already working to resolve this dispute, invoking the Railway Labor Act, when those efforts were cut short by the present NLRB action.

**[7]** In reasoning that *Jacksonville Terminal* did not foreclose its jurisdiction in this case, the Board failed to apply the law correctly. This is fundamentally a Railway Labor Act dispute and, as such, is "*pro tanto*, exempt from the National Labor Relations Act."

## CONCLUSION

**[8]** Because we conclude that, under the analysis of *Jacksonville Terminal*, the Board did not have jurisdiction over this Railway Labor Act dispute, we grant ALPA's petition for

---

[7]In justifying its exercise of jurisdiction in this case, the NLRB cited its decision finding jurisdiction in *Electrical Workers (B.B. McCormick & Sons)*, 150 N.L.R.B. 363 (1964). This case preceded *Jacksonville Terminal*. Furthermore, the issue in *B.B. McCormick* was whether unions that represented some Railway Labor Act but primarily National Labor Relations Act employees, and unions that acted as agents of such unions, were "labor organizations" within the meaning of the National Labor Relations Act. The Supreme Court did not consider in *Jacksonville Terminal* whether the National Labor Relations Act might apply "where railway organizations act as agents for, or as joint venturers with, unions subject to the NLRA; or where railway unions are engaged in a dispute on behalf of their nonrail employees; or where a rail carrier seeks a remedy against the conduct of nonrailway employees." *Jacksonville Terminal*, 394 U.S. at 377. The Supreme Court made clear, however, that the National Labor Relations Act does not apply to a "pure and simple" Railway Labor Act dispute. *Id.*

review and set aside the Board's Order. We deny the Board's petition for enforcement. In light of our holding, ALPA's motion for leave to file proof of changed circumstances will be denied as moot.

**Petition for review granted. Petition for enforcement denied. Motion for leave to file proof of changed circumstances denied.**